IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jamie Duignan, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16 C 9688 |
| | ) |
| City of Chicago, a Municipal Corporation | ) |
| | ) |
| Defendant. | ) |

Memorandum Opinion and Order

Plaintiff Jamie Duignan was working as a detective for the Chicago Police Department ("CPD") when, on approximately March 17, 2013, she engaged in conduct that led the Superintendent of Police to file charges against her before the City's Police Board on August 26, 2014.[1] In April of 2014 (i.e., after plaintiff's alleged misconduct, but before the Superintendent filed charges), plaintiff was hospitalized and provisionally diagnosed with acute psychosis delusional disorder. She later tested positive for Huntington's disease, which she states is "a

---

[1] Plaintiff's allegations do not describe the conduct, nor does the complaint make the sequence of events clear, but the decision of the Police Board, which plaintiff attaches as Exhibit B, sheds light on both issues. The parties do not appear to dispute the dates on which the events alleged occurred.

1

terminal genetic neurodegenerative disorder that is characterized by progressively worsening motor, cognitive, behavioral, and psychiatric symptoms." Second Amended Complaint ("SAC") at ¶ 12. Plaintiff alleges that her psychosis and Huntington's disease "were active for about two or three years prior to April of 2014," and that she was temporarily disabled from performing her duties as a detective, but that "her condition was medically resolved by September 29, 2014," at which time she "experienced a total remission of her psychosis and no longer exhibited any active signs of Huntington's disease." *Id*. at ¶¶ 13-15.

In the meantime, the Police Board held a hearing on the Superintendent's charges against plaintiff on November 21 and 24, 2014. Plaintiff admitted to the conduct attributed to her, but she presented unrebutted expert testimony that she was suffering, at the time, from "acute psychosis delusional disorder, secondary to a general medical condition, Huntington's disease." SAC at ¶ 20. In a decision issued on February 19, 2015, the Police Board found that plaintiff was not guilty of the alleged violations, as her behavior was the result of a paranoid delusional state that was substantially related to her medical condition. *Id*. at 22. The Police Board further concluded that the case involved "a medical rather than disciplinary

2

matter and should be handled by the Department as such." SAC, Exh. B at 11.

Thereafter, at defendant's direction, plaintiff underwent a psychological evaluation at the Center for Applied Psychology and Forensic Studies on March 6, 2015. The psychologist who evaluated her concluded that plaintiff was unfit for duty as a police detective. SAC, Exh. D. The decision states that it is "based on the background information, current test findings, observations, as well as interview data." *Id*. It goes on to elaborate, "[t]his decision is based upon the progressive course of Huntington's disease and the lack of an adequate departmental system to continuously monitor medication compliance and the Detective's psychological state." *Id*. Plaintiff grieved this determination on March 13, 2015.

On March 27, 2015, the Superintendent filed an action in the Circuit Court of Cook County seeking administrative review of the Police Board's decision finding plaintiff not guilty of misconduct. That action was dismissed, and the Police Board's decision thus affirmed, on July 27, 2016. In the meantime, plaintiff had been referred by her union for a second psychological examination by a different provider. The psychologist who examined her on April 7, 2015, found that she was fit for duty. The complaint does not indicate whether

3

defendant is aware of the results of that examination. Plaintiff has not been returned to work.

On September 16, 2015, the Superintendent filed a second set of charges with the Police Board (the "second charges"), again seeking plaintiff's discharge from the Chicago Police Department. Plaintiff does not describe the second charges, the events that gave rise to them, or when those events occurred. A hearing proceeded on the second charges on June 29, 2016. So far as the record reveals, no decision in that case has been rendered.

In Count I of her complaint, plaintiff alleges that defendant discriminated against and harassed her as a result of her disability, and failed to accommodate her disability, in violation of the Americans with Disabilities Act ("ADA"). In Count II, she asserts claims under the Genetic Information Nondiscrimination Act ("GINA"), alleging that defendant wrongfully requested her genetic information and wrongfully discriminated against her on the basis of her genetic information.

Defendant has moved to dismiss both of plaintiff's claims, arguing that she failed to exhaust her administrative remedies by filing a timely charge with the EEOC. In defendant's view, plaintiff's 300-day window to file an EEOC charge opened on March 6, 2015, when she was found to be unfit for duty.

4

Defendant further argues that plaintiff has not stated a claim for ADA discrimination because: 1) she does not sufficiently allege that she is a qualified individual, and 2) she does not allege "but-for" causation. Additionally, defendant argues that plaintiff's failure to accommodate claim fails on the pleadings because she does not allege that she ever requested an accommodation. Finally, defendant argues that plaintiff pleads herself out of her claims that defendant unlawfully requested her genetic information, and took adverse action against her based on her genetic information, in violation of GINA. For the following reasons, I grant defendant's motion.

I.

When considering a motion to dismiss, I draw all reasonable inferences in favor of the non-moving party, and I assume the truth all well-pleaded allegations. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a motion to dismiss, the complaint must set forth enough facts that, if taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

Ordinarily, a plaintiff need not anticipate and attempt to plead around an affirmative defense such as noncompliance with the statute of limitations. *See, e.g., Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). But where the complaint

5

alleges facts that establish "everything necessary to satisfy the affirmative defense," dismissal on a Rule 12(b)(6) motion is appropriate. *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

In Illinois, an employee alleging disability discrimination must file an EEOC charge within 300 days of the allegedly discriminatory act. *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) ("Because the ADA's enforcement provision expressly incorporates § 2000e-5 of Title VII, claims for discrimination under the ADA also must be filed within 300 days."). Here, the complaint does not allege, nor does the unsigned, undated version of the charge attached to the complaint reflect, the date on which plaintiff filed her charge. In her opposition, however, plaintiff acknowledges that the charge was filed on February 12, 2016, the date that appears on the document defendant attaches to its motion, and which appears to be the version of the charge that plaintiff ultimately filed.[2] Accordingly, for her claims to be timely, the complaint must allege discriminatory conduct within the 300-day window preceding that date, i.e., on or after April 18, 2015.[3]

---

[2] I note that this version is substantively different from the unsigned version attached to the complaint. I may take notice of the EEOC charge attached to the motion to dismiss. *See e.g., Reliford v. United Parcel Service*, 08 C 1266, 2008 WL 4865987, at *1 n. 1 (N.D. Ill. July 8,2008)(Coar, J.).

[3] Plaintiff is correct that failure to exhaust administrative remedies does not deprive a federal court of subject-matter

Plaintiff argues that her claim accrued on September 16, 2015, the day defendant filed the second charges. Resp. at 4. I agree with defendant, however, that the filing of these charges does not amount to an adverse employment action, and that the complaint articulates no actionable discriminatory conduct after March 6, 2015, the day the CPD-endorsed psychologist determined that plaintiff was unfit for duty.

"In a discrimination case, a materially adverse employment action is one which visits upon a plaintiff a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (internal quotations and citation omitted). Examples of materially adverse actions include changes involving "the employee's current wealth, his career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Id*. According to the complaint, at the time the second charges were filed, plaintiff had been on medical leave since at least April of 2014—a status in which she appears to remain to this day. Indeed, nothing in the complaint suggests that the pendency of the second charges has had any effect on her employment status.

---

jurisdiction. *Salas v. Wisconsin Dept. of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007).

Nor are plaintiff's claims saved by framing the alleged discrimination as a continuing violation. Plaintiff acknowledges that defendant's ongoing refusal to reinstate her does not amount to a continuing violation. *Stepney* 392 F.3d at 239-40. Accordingly, she relies on *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir. 1992), which she cites for the proposition that the continuing violation doctrine applies in cases where the employer "for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy...In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts." Resp. at 5 (citing *Selan*) (ellipses in original). But plaintiff's own allegations establish that the doctrine is inapplicable here.

The complaint cannot reasonably be read to assert a "covert" discriminatory practice. Instead, it alleges that the CPD determined, explicitly and overtly, that plaintiff's medical condition rendered her unfit for duty. By plaintiff's own account, she learned of that decision, and the basis for it, on March 12, 2015, when she alleges that she received a copy of the psychologist's report. SAC at ¶ 31. As the court explained in *Selan*, "what justifies treating a series of separate violations as a continuing violation" is that "it would have been unreasonable to require the plaintiff to sue separately on each

8

one," typically because "the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory treatment." *Id*. at 565-66. Plaintiff's allegations negate that theory here.

Finally, plaintiff's claims cannot be considered timely on the theory that the Superintendent's filing of the second charges was part of an ongoing pattern of harassment that spans a period both before and after the limitations cutoff date. Even assuming that ADA harassment claims are actionable, *see Lloyd v. Swifty Transp., Inc*., 552 F.3d 594, 603 (7th Cir. 2009) (declining to decide whether hostile work environment claim is actionable under the ADA), such claims require allegations of severe or pervasive conduct. *Id*. Here, plaintiff argues that defendant harassed her by pursuing charges against her, but as noted above, she does not describe the Superintendent's charges, claim that they were frivolous, or plead any other facts to support an inference that the charges were filed for the purpose of harassing her.[4] And while she notes that the hearing officer in the case "questioned the Superintendent's motive," SAC at

---

[4] Plaintiff also states in her opposition that defendant "purposefully failed her fitness for duty examination and...refused to write a letter, as required by the Illinois State Police, to reinstate her FOID card." Resp. at 10. These facts are not included in the complaint. At all events, they do not, without more, suggest actionable harassment.

9

¶ 40, this allegation is simply too thin a reed to support a claim of severe or pervasive harassment. Because plaintiff does not plead an actionable harassment claim, that claim cannot be used as a "hook" to bring time-barred conduct within the limitations period.

Similarly, even if plaintiff's failure to accommodate claim were timely, it would still fail for at least one additional reason: plaintiff does not allege that she requested an accommodation. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013) ("the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches") (citation omitted). Indeed, the complaint does not suggest that plaintiff asked defendant to make any changes to "its ordinary work rules, facilities, terms, and conditions" that would enable her to return to work. *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995). What she asked for is her job back, but that is not an accommodation. *Id*.

I also conclude that plaintiff's GINA claims do not survive dismissal. Under GINA, it is unlawful for an employer to "discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee." 42 U.S.C. § 2000ff–1(a)(1). "Genetic information" is defined as

information about (i) an individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual. 42 U.S.C. § 2000ff(4)(A).

Plaintiff's allegations do not plausibly suggest that defendant requested her genetic information. Plaintiff urges me to infer that defendant must have requested her genetic information based on the allegation that the psychologist who found her unfit for duty based that conclusion, in part, upon "the progressive course of Huntington's disease." But according to the complaint and its attachments, by the time that psychologist evaluated plaintiff, plaintiff's expert had already testified about her diagnosis of Huntington's disease, and the Police Board had already found plaintiff not responsible for her alleged misconduct based on her medical condition. Accordingly, the fact that the psychologist considered plaintiff's diagnosis of Huntington's disease does not, without more, suggest that defendant unlawfully requested plaintiff's genetic information.

As for plaintiff's discrimination claim under GINA, 29 C.F.R. §1635.12 provides that "[m]edical information that about a manifested disease, disorder, or pathological condition" is not considered "genetic information" under GINA. Because plaintiff specifically alleges that her psychosis "was organic in nature and a clinical manifestation of Huntington's disease,"

11

I conclude that she has pled herself out of any claim that defendant took an adverse action against her based on her genetic information, as opposed to on her actual diagnosis of Huntington's disease, which is the substance of the discrimination claim she asserts under the ADA.

For the foregoing reasons, defendant's motion to dismiss is granted.

                              **ENTER ORDER:**

                              *[signature]*

                              **Elaine E. Bucklo**
                              United States District Judge

Dated: April 6, 2017